UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| CHARLES MACK, | ) Docket No. 2:15-CR-111-NT |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER ON RESTITUTION**

Defendant was sentenced for stalking, 18 U.S.C. § 2261A, which is considered a crime of violence within the meaning of 18 U.S.C. 16(b) and the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A(c)(1)(A)(i). The MVRA requires a defendant to pay restitution to identifiable victims who have suffered either physical injuries or pecuniary losses as a result of certain criminal offenses. 18 U.S.C. § 3663A(a)(1), § 3663A(c)(1). For purposes of the MVRA, a victim is anyone who is directly and proximately harmed as a result of the commission of the offense. 18 U.S.C. 3663A(2).

There is no question in this case that the victim is A.M. The burden of demonstrating the amount of the victim's loss is on the government, and any dispute regarding the amount or type of restitution must be resolved by the Court, by a preponderance of the evidence. 18 U.S.C. 3664(e). Prior to the Defendant's sentencing, A.M. prepared a Victim Impact Statement, dated May 26, 2016, which detailed her experiences as a result of the Defendant's criminal conduct in this case.

At the June 16, 2016 sentencing hearing, counsel for the United States

presented a request for restitution in the amount of $15,000 – consisting of $1,756.93 in medical expenses and $13,243.07 in lost wages – to be made to the Maine Victims' Compensation Board. At the sentencing hearing, I ordered restitution for A.M.'s medical expenses in the amount of $1,756.93, but I left the record open and asked the Government to provide me with additional documentation on the issue of lost income.

The Government now requests $13,243.07 in lost income for A.M. A.M was a real estate broker during the time she was unable to work, and her income was based on commissions. A.M. submitted a request for compensation to the Maine Victim's Compensation Board in May 2015 and was paid $15,000 in July 2015. At sentencing, the Government offered the testimony of Debra Shaw Rice, the Director of the Maine Victim's Compensation Board (the "Board"), to explain how A.M.'s lost income was calculated. The Board had previously reimbursed A.M. $13,243.07 for 17 weeks of lost income – representing loss of income between August 11, 2014 and November 30, 2014. Ms. Rice testified that the Board determined the average gross weekly wage by averaging the income from A.M.'s 2012 and 2013 federal and Maine tax returns. In 2012 A.M.'s income was $49,000 and in 2013 A.M.'s income was $90,000. A.M.'s average annual income for the two years considered was $69,500, and her average weekly gross wage was $1,337.53. The weekly gross wage was multiplied by 17 weeks to get the total gross loss of $22,738.01. Gov't Ex. 1. The Board then multiplied the loss of $22,738.01 by 77% in order to determine A.M.'s net lost wages of $17,508.27. Gov't Ex. 1. The Government requested only $13,243.07 in lost income because the Board has a cap of $15,000 for each victim's claim and the Board had paid A.M. $1,756.93 for medical expenses.

The Government has now provided a supplemental victim impact statement from A.M., the Disability Statement that A.M. provided to the Board dated April 2, 2015, a letter from A.M.'s primary care physician dated March 23, 2015 documenting a diagnosis that lead to lost time at work, and a letter from A.M.'s treating psychologist dated February 24, 2015.  Gov't Exs. 4, 5, 6, and 7. These letters establish by a preponderance of evidence that A.M.'s lost income was a result of the anxiety and trauma caused by the Defendant's stalking activities. The Defendant submitted evidence that A.M. had three real estate closings during the 17-week period.  Def. Exs. F, G, and H. The court does not find that that such evidence weakens A.M's lost income evidence. The fact that three closings took place during the period of claimed lost income likely reflects work A.M. did prior to her victimization. Additionally, the Government advised that A.M. worked with a team of other real estate professionals who could have been called on to cover for her. I find that the Government has sustained its burden to prove A.M.'s lost income by a preponderance of evidence.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Government's Motion for an additional amount of Restitution in the amount of $13,243.07 for a total of $15,000 in Restitution.

**SO ORDERED**.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 19th day of July, 2016.

3